Luis Vilella y Vélez, Appellant, *v.* Registrar of Property of Mayagüez, Respondent.

No. 676. Submitted March 14, 1927.—Decided May 23, 1927.

*José Sabater* for the appellant. The registrar appeared by brief.

Mr. Justice Franco Soto delivered the opinion of the court.

Angel Rodríguez Balzana, as executor under the will of Dolores Nadal y Freyre, sold to Luis Vilella y Vélez certain rural properties, and on presentation of the deed in the registry the registrar refused to record it on grounds that we shall sum up as follows:

1. Because the record thereof must be previously made in the name of the testamentary heirs, as provided by section 20 of the Mortgage Law.

2. Because as there are heirs and legatees under age interested in the inheritance and it does not appear that they are represented by either their father or mother, or by a guardian, and as there are also absent heirs and legatees and public institutions interested in the inheritance, and it does not appear that they are legally represented in this jurisdiction where the estate of the deceased is situated, a judicial administration is required and the sale made by the executor can not be recorded without judicial intervention, pursuant to the provisions of the law of special legal proceedings and those of section 877 of the Civil Code.

3. Because it does not appear that the inheritance has been expressly or tacitly accepted or renounced by the heirs of the deceased. In the former case a previous record is required in the names of the heirs, and in the latter compliance should be had with the provisions of subdivision 3 of section 886 and with those of section 887 of the Civil Code.

4. Because it is necessary first to have the probate of the will determined by a court of this jurisdiction.

Moreover, the registrar noted in his decision the following curable defects: Failure to show that none of the heirs died before the testator leaving forced heirs and that none of the latter was under age, and failure to show that they have observed in the will the forms and solemnities required by the Spanish laws.

Dolores Nadal y Freyre made an open will in Madrid, Spain, on November 17, 1924. She stated therein that she married Rafael Gálvez y Echegaray, that being her only marriage and from which there was no issue, and as she had neither ascendants nor descendants, there were no forced heirs. The testator made several specified cash legacies; then she left the residue to different persons whom she named; she prohibited judicial intervention and appointed as executor and commissioner, in the first place, Angel Rodríguez Balzena on whom she conferred, among others, the following powers: ''The testator conferred on him, moreover and without prejudice to the general legal powers, the widest powers to take possession, on the death of the testator, of all the properties constituting the estate of the decedent and to manage them unconditionally until the distribution of the inheritance and delivery thereof to the heirs and legatees, to receive its income and products; . . . . to sell or otherwise dispose of, in such manner and conditions as he may deem proper, all kinds of securities, personal and real property, and rights of whatever kind; . . . .''

The first three grounds are intimately connected and will be considered jointly.

The main question in this appeal is the non-appearance of the heirs in the sale made by the executor and as to whether or not their intervention therein was necessary.

The following sections of the Civil Code provide:

"Section 875. Executors of wills shall have all the powers expressly conferred upon them by the testator and which are not contrary to law.

"Section 876. Should the testator not have specially determined the powers of the executors they shall have the following:

"1. To dispose and pay the suffrages and funeral expenses of the testator in accordance with the provisions made by him in his will and, in their absence, according to the customs of the town.

"2. To pay, with the knowledge and consent of the heir, the cash legacies.

"3. To carefully see to the execution of the other provisions of the will and maintain, when just, its validity in and out of court.

"4. To take the necessary precautions for the preservation and custody of the property, with the intervention of the heirs who may be present.

"Section 877. Should there not be in the estate cash enough for the payment of the funeral expenses and legacies, and the heirs should not contribute from their own funds thereto, the executors shall sell the personal property; and should the proceeds therefrom not be sufficient, the real property shall be sold, with the intervention of the heirs.

"If a minor, absentee, corporation, or public institution should have any interest in the estate, the sale of the property shall take place with the formalities prescribed by law for such cases."

Undoubtedly, the registrar has failed to take into consideration in its real scope section 875, specially in relation to the institution of voluntary heirs. The powers referred to in the above section are the extraordinary or special ones which the testator confers on the executor independently of those legally exercised by him and specified in section 876. The latter are ordinary in their nature and may be called legal or usual and are limited by their own nature. It seems

that the difficulty of the registrar arises from the failure to discriminate between them. We are not considering, therefore, the legal powers of an executor, but the wide and special ones conferred by the testator and which are not contrary to law.

In the present case the testator conferred on the executor extraordinary powers, including therein that of conveying real property. How far this power may go has been a controversial matter amongst authors, and in the Spanish jurisprudence when the persons interested in the inheritance are forced heirs. This court, however, set up the doctrine to be followed in the case of forced heirs in the case of *Succession of Criado* v. *Martínez et al.*, 25 P.R.R. 308. The present appeal, however, does not deal with forced heirs. No difficulty seems to appear when there are only voluntary heirs. Galindo and Escosura (vol. 2, p. 73), referring to the latter class of heirs, express themselves as follows:

"Can it be contended that such power is contrary to law?

"If there are only voluntary heirs, it can, of course, be answered in the negative, because they are only heirs by virtue of the testator's pleasure to which they must submit absolutely. (See Resolution of November 5, 1887, and September 16, 1890.)"

Manresa's Commentaries on the same matter are as follows:

"In the same manner that a testator, when conferring powers to sell property, may state the purpose thereof, he may also specify the requisites to be followed in carrying out the sale; he may require a public sale or the intervention of the heirs, or any other formalities. But if he gives absolute power to sell all the property or a part thereof, without adding any limitation, the executor may convey it as he deems best, without the intervention of the heirs, or the requisite of a public sale, or any other formality, in the case of voluntary heirs." Manresa, Civ. Code, vol. 6, p. 767, 4th ed.

The theory is that in the case of voluntary heirs, all the property of the predecessor in interest being of free disposal, it may be disposed of with absolute freedom, for it is not

contrary to any legal precept for the testator to authorize the executor to convey property in any manner deemed best by him, without the intervention of heirs, and still less with the intervention of courts, where it is expressly prohibited by the testator. The rule is that as no legal provision is violated by the powers without limitation conferred on the executor, the pleasure of the testator is law.

The other requisite required by the registrar of the previous record in favor of the heirs raises the question: Who is represented by the executor? Manresa also argues on this point and says:

"The decision of January 7, 1875, for the purpose of the record, set up the doctrine that the universal executor represented the testator, but the private executors were representatives of the heirs and appointed to assist the latter, by reason of the anomaly of the agent representing a person already dead and of the danger of allowing him to act independently of the heirs.

"This theory, supported by arguments of great weight, is today fully discredited. The majority of authors are against it, and the jurisprudence has been of late admitting the contrary theory, that the executors represent in every case the person of the testator. As an example thereof there may be cited the judgment of July 4, 1895, and the decision of October 22, 1897." Manresa, Civ. Code, vol. 6, p. 771, 4th ed.

The author then argues that the testator is really represented by the executor who is a fictitious prolongation of the life of the predecessor in interest for the purpose of carrying out all that the latter intended to have done and that the alleged necessity of the previous record of the property can not alter the truth of such statements. He was then referring to authors who admitted certain contradictions between the provisions of section 901 of the old code, equivalent to section 875 of the Revised Civil Code, and the provisions of section 20 of the Mortgage Law. But he says that if there is any contradiction, it is not in the provisions of the respective laws, but in the doctrine set up by the General Directorate

of Registries. There follow several decisions of that body, and he concludes by saying:

"This springs up from a narrow and not very logical construction of section 20 of the Mortgage Law, and from trying to bring into harmony, on a false basis, provisions which are considered to be contradictory.

"What is sought by the aforesaid section 20 is: To keep in the registry a complete history of each property or right; that such history should not be interrupted; that the only owners entitled to act in such capacity should be the owners of record or their legal representatives; and that is the reason for requiring that the person who sells, mortgages, constitutes or conveys any real right should have previously recorded the right in the registry. Otherwise it would be impossible to determine whether or not there existed any right to be conveyed. The registrar and third parties need a reliable guide and that guide is the record, the data from the registry.

"But it is not to be inferred therefrom that, when an executor has been authorized to convey property, it should be necessary to record the property in favor of the heirs who are outsiders, or in the name of the executors who do not acquire ownership or any real right in such property.

"The testator is the owner and the previous record must appear in his name. When he makes his will and confers on the executor authority to lease, mortgage, sell, convey property in order to settle debts, cancel the record of certain property or rights, or any other authority residing in him, he does not part with any real right in favor of the executor; he only authorizes him to make such disposal in his name, and in that way the property or right thus conveyed passes directly from the ownership of the testator to that of the recipient, the executor being only an instrument, an agent, a mere performer of the will of the predecessor. . . . . .

"The foregoing relates to section 901. In the case of section 903 the question is different, because the executor is not authorized to sell either by the owner or by law. The executor brings about the sale, intervenes therein, because he thus gets rid of the article; but the heirs are the sellers, and it is logical that a previous record in their favor should be required." Manresa, id. pages 773, 774 and 775.

In view of the above doctrine there must be no doubt as

to the previous record required by the registrar being unnecessary.

It seems to be contended in the fourth ground that the courts of Porto Rico should have intervened to pass on the validity and authenticity of the will because it had been executed by the testator abroad. In accordance with section 11 of the Civil Code, which provides that the forms and solemnities of wills are governed by the laws of the country where they have been made, such judicial intervention to establish its validity is not required. It is not superfluous, moreover, to say that in the present case the forms and solemnities which appear in the will are the same as those required by the Civil Code of Porto Rico. It was important to establish the authenticity of the will and this appears to have been done by means of a duly certified copy of the original, as required by subdivision 8 of section 69 of the Law of Evidence.

As to the defects noted in the decision, the first one has no foundation because it has been shown that the appearance of the heirs was not necessary for the validity of the sale; and as to the second, as the forms and solemnities alleged by the registrar to have been omitted have not been specified, there is no defect to be cured.

From the foregoing the decision appealed from must be reversed and the record ordered.